May it please the Court, I'm John Weston, representing the plaintiff in this case, Erie Insurance Company. I've reserved five minutes of rebuttal, and I'd like to continue that. We haven't had a trial in this case. It sure sounds like it would be fun. What we're asking the Court to do here, this is the flaming headlamp case that burned down a house. It is Amazon's, I can't remember the name of it, FBA problem fulfillment by Amazon. It's the case where a Chinese individual shipped a series of headlamps, presumably, to Amazon, and from the point that he put it on the boat or whatever he did, that is the end of his participation in this case. From then on, everything that happens in this case happens at Amazon. Amazon takes the product, Amazon stores the product, Amazon advertises the product, Amazon accepts the buyer's order, takes the purchase price, takes its own cut of the purchase price, puts the headlamp in an Amazon box, and ships it off to the buyer. I thought the screen said this was sold by Dreamlight. Dreamlight is a friendly name. No, I didn't ask that. I said, didn't it say on the screen on the Amazon posting that it was sold by Dreamlight? It's a fair question, Your Honor. No, I'm asking just a factual question. Did it say that on the screen? I can't answer that question because we don't have an actual screenshot in this order that says sold by Dreamlight, but for purposes of this argument, let's assume that it did say that. All right, sold by Dreamlight and fulfilled by Amazon, and under the facts that's established, the seller, Dreamlight, puts the product in the warehouse of Amazon, and Amazon fulfills the order. That's correct. And title remains with Dreamlight. Dreamlight's the seller. As between Amazon and Dreamlight, that is the agreement. That is not disclosed to the buyer. I know, but that's the way titles pass, by agreement or not. And so Dreamlight has title, and title passes to the consumer. Amazon acts as a marketplace, and it acts as a warehouseman for them, or a consignment shop, so to speak, delivers it, collects the money, and returns that to Dreamlight. The question is, under the Uniform Commercial Code in Maryland, what's the significance of Amazon's role when they did not have title, but they did participate in the transaction as you described? Isn't that it? Let's assume that that's it. Under the UCC analysis, we'll move on to 402A after that. Well, both of them require title. That's the point. Both of them impose liability on the holding title. That is true by itself, Your Honor, but under 402A, you impose liability on a greater variety of people than just the title. I understand, but if you have a manufacturer, you have a distributor, you have a dealer, and you have a customer, title passes all the way along. You buy an automobile from a local dealer, they give you title, and the manufacturer gives the dealer title. And you go to Walmart, and they buy a Dreamlight from Dreamlight, and they sell it in Walmart. They have title to it. They sell it to you. But if you go to a consignment shop, and you buy furniture at a consignment shop, and that furniture still belongs to the person consigning the furniture, there's no title there. And so there'd be a different liability for the Let's focus on the question of title because some of the cases... Well, you have to because that's what all those statutes require. 402A does not require that, Your Honor. But the UCC, its definition of a sale is the passing of title, not directly, not anything else, just the passing of title from a We've argued in the brief that Amazon, as an entrustee, I suppose, under 2-403, has the power to transfer Dreamlight's title to the purchaser. That section exists, according to the official comment, expressly to avoid hidden interests such as Dreamlight's retention of title in this case. So Dreamlight itself, and the brief points this out, had no ability to actually deliver title directly to the buyer because there was this middleman transaction. Amazon has the power to transfer the title. That never had title. They said it's being sold by Dreamlight and being fulfilled by Amazon. Amazon does say that. Amazon says that to Dreamlight. Amazon does not actually say that to purchasers. Amazon, in this case, has... Well, if you look on the screen, Amazon, they have three types of transactions. They have the ones where Amazon sells it. They're the seller. They have postings where someone else sells it, and they're posting it. And then they have where someone else sells it, and they fulfill it. And with respect to the first one, when they're the seller, they have seller liability, both under the UCC and 402A. 402A applies only to sellers. And so it's right in the language of it. No, no. I can address that now or later. One who sells any product, and then the seller is engaged in the business of selling that product, and you go into the notes, and it explains a seller's liability. In other words, they're trying to avoid privity of the manufacturer, anybody who sells a product in Title IX, and it's a strict liability. But my point is that Amazon puts itself in two or three different postures. It's a marketplace, and it sells some of its own products. It sells products that others sell there, and they post it. And then it sells products that others sell there, and does the warehousing for them. I agree, Ron. It has those three means. There's no question in this case as to Amazon being the admitted seller. This case is not like the Oberdorf case that's pending in the Third Circuit, where it is a true third-party seller, where the seller ships directly to the buyer. This is the case in between, where Amazon takes a much bigger role in the sale. Amazon did pass the title. That is a sale. Amazon didn't own the title. Where are you getting that information? What supports your claim that Amazon had title at any time? I am not. Well, you said Amazon passed title. Amazon didn't pass title. Dreamlight passed title, according to Amazon and according to Dreamlight. According to the UCC, Amazon passed the title to... They didn't have title. They had the ability to pass Dreamlight's title. 2-403, Dreamlight is an entrustor. An intermediary doesn't pass title. The intermediary passes the product. If Dreamlight had title, then when a consumer purchases it on the Amazon marketplace, title goes from Dreamlight to the consumer, and delivery effects the passage of title. Under certain transaction types... You think FedEx is a passes title when they deliver a package at your front door? No, but I think FedEx doesn't warehouse the products. I don't think FedEx advertises the products. I don't think FedEx's charges are based on of the sales of the product. FedEx is different. FedEx is an ad hoc... They're clearly different, but my only point for bringing that up is the fact that somebody has a marketplace where they let other people sell products or they sell their own doesn't make them a title holder of everything. I haven't claimed, we haven't claimed in this case that Amazon actually held title to the product. We don't have to. So you brought this action in Maryland State Court, did you? We did, Your Honor. And it was removed here? That's correct. And we're dealing with Maryland's UCC, so we're dealing with Maryland law. And we don't have very much Maryland law that resolves this case. And we do know, at least from history, that product liability is a policy-oriented situation. So would you favor certification of this question to the Maryland Court of Appeals? I actually anticipated that question, Your Honor. Well, good. And my response was, certainly this court has the power to do that. Maryland has such a statute that it enables it to entertain such questions. I suggest that the tools for making the decision make a transfer unnecessary. We know what the Maryland UCC is. We know what Maryland's 402A law is. What we don't know is what the Maryland Court of Appeals would say that the UCC permits, because both Judge Niemeyer and I have practiced law in Maryland for a long time. And every now and again, the Maryland Court of Appeals surprises us on what it says the UCC says. This case is full of surprising court decisions, Your Honor, already. And I would have thought with the difficulty you seem to be having with establishing that there was a seller here that was Amazon that you might favor, might look for reliefs in the Maryland Court instead, particularly since that's where you filed to begin with. Well, that is so, Your Honor. I thought you just told me you didn't want it to be certified. To that extent, I may wish to reconsider my previous answer. Either way, we can extend this case further, go to Maryland, do that process, or we can decide it here. Judge Niemeyer, I think, would favor the decision I sent the Rule 28 letter in on yesterday from the South District of New York. But because I have the yellow light on, let me just quickly hit the 402A. 402A does not focus on title at all. Its definition, and it's cited in the blue, applies to any person engaged in the business of selling products. I wanted to make this point before I ran out, because all of the cited cases and language and so forth is in the briefs. What's the practical difference here? Why is the fulfillment by Amazon? Actually, you left out the most important part. What you quoted was a seller who is in that business. But the liability is in the very first sentence, one who sells any product. And then it says a seller has to be one in the business in order to have strict liability. Amazon is clearly in the business. That's a subclass under the statute. You have to be a seller. And then it doesn't apply to all sellers. The subclass is sellers who are in the business. That's the way the statute reads. That's true. The statute reads that way. Let's assume that this dream light came into Amazon's warehouse glowing and smoking. Amazon has the ability at that point to exercise some control over the program, over the product. That ability does not exist in the true third party seller situation where the third party ships directly to the customer. That's what brings this case into the regularly conducts business of this type language that's in all of these 402A decisions. I have a minute left. If I could reserve that for rebuttal in addition to my five. Yeah, I'll be fine. Thank you, Your Honor. Mr. Murphy. Good morning, Your Honors. May it please the Court. My name is Brendan Murphy for Amazon.com. To answer directly Judge Motta's question about certification, I don't believe that would be productive here because the district court also granted summary judgment based on the Communications Decency Act. And that's not really an issue that the Maryland Court of Appeals would be able to weigh in on. So I don't think there would be much of a point here. Even if that aspect wasn't in the case, Maryland law is actually fairly clear, and the weight of authorities around the country on this issue are also clear. Every single court that has considered the issue whether Amazon is liable as a marketplace provider has held that it is not. And they've done so in a variety of contexts. Some courts, such as the Oberdorf Court, have done it under 402A. Others, such as Steiner, Allstate, and Fox, have interpreted seller statutes, some of which are much broader than the one that Maryland has because they have provisions that attempt to get to other entities who, quote, otherwise participate in the distribution of a product in a line of commerce. Turning to Maryland law, there are a couple of bodies of law that address the issue here, which is whether a service provider can be subject to strict liability. And I think you Kagan. I'm sorry to interrupt the flow because you certainly were doing fine. As I've sort of been looking at these cases, you're a veteran of these cases, right? You go around the country removing cases that are filed in state court, putting them into federal court where Amazon is sued. And then it seems to me that not only would Maryland benefit by a removal or not, but at least we would get an actual state court telling us what the law is, as opposed to federal judges who are guessing what the state court would say about an issue of state law. Amazon has been successful in getting all these cases removed, and I can see why. You're an excellent lawyer, and you managed to do all that. But run by me again why removal would be a bad idea. It may be enough that the other side doesn't seem to want removal either, so. Oh, certification because the — Certification, sorry. You've already had removal. Sure. It was started there. It's because the Communications Decency Act, the federal statute, 47 U.S.C. 230, was an alternate ground on which the district court granted summary judgment. I know, but if we should conclude that, in fact, it doesn't give you immunity, we would have to do that to be sure before we could certify. Correct, Your Honor. Okay. Yes. Well, I understand your answer then. But I do want to point out, though, that not all the cases have been decided in federal court. Steiner, the one that was recently handed down by the 9th District Court of Appeals in Ohio, never made its way to federal court. I think it's the only one, though. Did you try to remove that case? No, there was an in-state defendant, Your Honor. There was what? There was an in-state defendant, the Kelsey Kidd, the — Uh-huh. Yeah. But — So you couldn't remove it. Correct. This is sort of proving my point here. Well, there — but we've also recently gotten summary judgment in a couple of California state court cases, last Friday in a case called Loomis v. Amazon, and a few weeks ago in San Diego State Court in a case called Bolger v. Amazon. Those are unpublished opinions by those courts. I don't believe they are available in West's law. But the fact of the matter is the plaintiffs in those cases have indicated an interest in taking that up, too. So there will be state courts around the country deciding this issue. Are the UCCs — were you involved in those cases? Yes, Your Honor. Are the UCC provisions in those cases identical to the UCC provision that's issued in Maryland law? Yeah. Specifically, 2-106, the provision that defines sale, is, I believe, identical in every state we've looked at. But the case law interpreting it can't be identical. Because judges don't act in identical ways in every state. I can't speak to what — how various courts have treated other issues under 2-106. But every single court that has considered this issue, whether Amazon is liable as a marketplace provider, has held that it cannot be liable under any theory — strict liability, negligence, misrepresentation, re-statement 323. Are all of these — You get to misrepresentation. You get to different issues then. And you may — if it's its own representations, I think it gets much dicier if there is an explicit representation on the marketing in the market that's done by Amazon. Well, that would be true. But the basis of all those claims is that the product description on the product detail page contains a misrepresentation. And the reality in all these cases is that it's the third-party seller that provides that content. We don't have to get into that because the claim here is a defective product, probably a defective battery. Correct. But the claim — the nexus between that claim, this plaintiff, and Amazon, and this incident is a website. The sale — I think it's worth stepping back and looking at just the overall elements of sale. If Amazon sells it itself, the fact that it's online doesn't change it from Walmart that sells it from a bricks-and-mortar store, right? Correct, Your Honor. And we've never argued to the contrary. All right. So it's — the online aspect doesn't do anything to the calculus. The question is, what role are they serving when they sell online? That's correct. And just to point, Your Honor, to a part of the record, if you look at A100 in the original appendix, note that there's a numbering issue. The brief cite to the original appendix filed in June of 2018. There's a supplemental appendix that was filed in September or August. The pagination is four off. So I'm citing to the June appendix, A100. That is, I think, Exhibit D in Mr. Cohen's declaration, which, addressing your question earlier, Your Honor, shows the sold-by and fulfilled-by information. That's exactly how it is presented to the user. In a situation where — You can almost take judicial notice of it. I would guess everybody in this room has been on Amazon at one time or other. I would think so, Your Honor. But just — when Amazon is a retail seller, and when it says — in that case, it says soldbyamazon.com, Amazon sources the product. Amazon prices the product. Amazon physically possesses the product, writes the offer. And that's Amazon content on the product detail page. In this third-party situation, whether it's fulfillment by Amazon or whether it's fulfilled directly by the merchant, the offer is written by the third-party seller. The price is set by the third-party seller. Title is held by the third-party seller. And the only difference between the fulfillment by Amazon and the ordinary merchant-fulfilled transaction in the marketplace context is that Amazon takes physical possession by offering this storage service as part of the FBA program. And where plaintiffs differ, I don't believe any of this is contested other than this idea that plaintiffs advance that title somehow either vests in Amazon or gets passed by Amazon under this entrustment provision of the Maryland UCC. That provision does not give Amazon title at all. That simply gives a buyer in the ordinary course of business who purchases from a merchant and goods of that kind clear title. It's a protection from the buyer. It doesn't mean that the buyer obtained title from that merchant. And just as an example, if you take your bicycle into a bicycle shop that sells bicycles for repair and that bicycle shop dishonestly sells it to somebody else, that buyer is protected under 403. That is what that is intended to protect or to do. It does not have anything to do with giving that bicycle shop title. So 403 really has nothing to do with this transaction. There's no claim that Amazon somehow wrongfully conveyed title. So I think the court's focus on title is appropriate under the Maryland UCC because the Maryland courts under 2-106 define a sale as the passing of title in exchange for a price. And am I right? I thought this is a little bit in addition to Judge Motz's questions. I've sort of assumed that Maryland applies the general UCC jurisprudence. They cite cases from out of state in their cases and the Maryland UCC is generally identical to the UCC as originally adopted. That's correct, Your Honor. I've read through a lot of it on the plane here and I haven't literally compared word for word, but it is very similar to what's been enacted. I guess I was going more to it is similar, but it does differ in some respects. And other states, I don't begin to say how much they have replicated the UCC. So when you're relying on other federal courts that are looking at guessing what state courts are going to say the UCC provisions are in that state, I think we're... Anyway, that was my uncertainty, but go ahead. You don't have to comment. I think that's just true. Yeah, I mean, the core focus of all the cases in all the states, whether they're federal or state, has been on what constitutes selling under state law. And all of those states have UCC provisions that are basically identical in defining a sale as a transfer of title in exchange for price. And I would draw the court's attention to three more pages in the record on the issue of title. The business solutions agreement, which has been produced in this litigation, I believe it starts around A27 in the June version of the appendix, has so-called fulfillment by Amazon terms. These are the terms that outline the relationship between Amazon and a third-party seller who participates in the FBA program. And if you look on A59, 61, and 65, those three pages have provisions that address title. And they all, they address things like what happens if, to take the situation that Mr. Weston proposed, Amazon receives in its fulfillment center a headlamp that's glowing or leaking. I don't remember exactly. He proposed a hypothetical in which it was defective in some fashion. It was obvious from somebody in the fulfillment center. In that instance, that would be considered a problematic unit under the FBA terms. And Amazon would have the, there are terms that deal with Amazon if the- Well, that's a bailment situation. In the whole area of bailment law, you don't have to, a bailee doesn't have to accept goods that are damaging or will damage the goods in the warehouse. Correct. Correct. And my point is that the BSA provisions on those pages governs, it gives Amazon a right to take title in that very limited situation. And it also has provisions that talk about, okay, if a customer is unhappy with a third-party seller's product and they return it to Amazon, it prescribes the re-transfer of title directly from the buyer to the third-party seller. So the BSA is actually very clear on the concept of title and specifically that Amazon never has it except in the very limited situation where there may be a problem unit that has to be disposed of without being returned to the seller. To address Judge Motz's question on policies, there are a couple of Maryland Supreme Court cases that deal with- Court of Appeals still. They're thinking about changing it to Supreme Court, but- Thank you, Your Honor. It's still the Court of Appeals as we sit here. The Maryland Court of Appeals does have a couple of cases that address invitations by parties to engage in policymaking and extend strict liability. In the Halliday case, it's Halliday v. Sturm and Ruger Company, 368 Maryland 186, the court was invited to adopt a restatement third provision on design defect for guns. And it declined to do that, and it has an interesting line about how we should not be creating new theories of liability because we have consistently recognized that common public policy of the state set forth by the General Assembly of Maryland. The General Assembly of Maryland has spoken on the issue of sellers and what their liability should be. In the seller statute, which is in the judicial proceedings part of the code, section, I believe it's 5-405, it's what we refer to as a sealed container statute. It is an attempt by the General Assembly to respond to the dramatic expansion of liability accomplished by Restatement 402A and to pull it back to protect sellers. And it defines sellers. And it defines sellers essentially as 402A does, but it uses specific terms like retailers, wholesalers, and distributors. And these are all defined concepts in the law. The retailer is the final seller who interfaces with the consumer. Wholesalers and distributors are simply entities in the middle who take title and pass it along down the chain. The second, and Amazon does not fit into any of those because it never had title, never actually accomplished a sale. The second case I'd like to direct the Court's attention to, which is in our brief, is called Nissen Corp v. Miller. It's at 323 Maryland 613. In that case, the Maryland Court of Appeals was invited to extend liability to a predecessor corporation. And the argument that was advanced was that, quote, some entity must be held responsible where a consumer has suffered a personal injury. And the Court rejected that because there's no real fault there. And the Court was very clear in saying, we didn't adopt strict liability in Phipps v. General Motors in 1976 just to make sure that somebody can respond. We adopted it with this idea of fault. We wanted to get rid of the privity requirement and the proof requirement for negligence actions. But the Court was very clear that it retained this notion that there needs to be some kind of fault. And the fault it had in mind is actually being a seller. With my last four and a half minutes, unless the Court has questions on the State law question, I'd like to address the Communications Decency Act. Sotomayor, which we don't have to reach. Which you don't have to reach. That's correct, Your Honor. Well, we don't have to reach it. I completely understand, Your Honor. But because I can't predict how the Court will come out, I'd like to just spend a few moments on it. You might lose your credibility, you know. I'm sorry? I withdraw that. Oh, sorry. Just it might not be your strongest argument. The CDA? And you can always sit down. I will take that invitation, Your Honor. Unless the Court has further questions for me. Thank you, counsel. Mr. Weston, you have your reserved time plus one. Presumably, I won't need it all. Okay. But there are a couple of things that I ought to cover. I agree with Mr. Murphy that the Consumer Discount Act, or Consumer Decency Act, rather, really isn't a factor in this case. If Amazon is covered by warranty law in 402A, then Amazon is being sued in this case for its own actions or lack of, not for the advertisements of third parties on its website. So the Consumer Discount Act wouldn't apply. If the Court finds that Amazon is not subject to 402A and the UCC warranty, then it really doesn't matter because there's no claim in the case. So that takes care of the CDA. The focus, I suggest, is too much on direct transfer of title. When I came to the ugly discovery of that Eberhardt, New York, South District case on Tuesday night, after I wrote the 28J letter to this Court the next morning, I looked at some of the cases, and I would cite one right now. It's 571F2nd408, Hartford Automobile Insurance Company of Hartford versus Murray. And at page 422, it says that it's New York law that a licensor can be, not just a licensor who doesn't hold title, can be based on strict product's liability if it's shown to have had a significant involvement in the distribution or is capable of exercising control over the quality of the product. That was why I raised the extreme hypothetical that I did. It's the difference between the fulfillment by Amazon program and the other two types of Amazon programs. It is not true that every case that has considered the facts before the Court has ruled in Amazon's favor. There are only two, three cases that even discuss the FBA program. The Allstate case in New Jersey, which was decided on the basis of New Jersey statutory and relatively strict product liability law. The Eberhardt case, which is the South District of New York and which goes directly contrary to New York law. And the Milo and Gabby case, which is decided on patent and trademark law. The focus of 402A is on covering everyone who regularly participates in the distribution chain, whether they have title or not. To the extent that the Court thinks that it is prudent to certify this case to the Maryland Court of Appeals, the plaintiff certainly would not resist that. And I still have two minutes left. I'm not going to use it. Thank you. All right. Thank you, counsel. All right. We'll come down and greet counsel and proceed to our next case.
judges: Roger L. Gregory, Paul V. Niemeyer, Diana Gribbon Motz